IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PATRICIA ANN MAYNOR,
     Plaintiff,

vs.                                                             Case No.: 3:14cv657/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

       This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 9, 10).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

I.     PROCEDURAL HISTORY

This case marks the second time Plaintiff has sought review of the Commissioner's decision in this court. Plaintiff filed her applications for DIB and SSI on October 26, 2006, and in each application she alleged disability beginning October 1, 2005 (tr. 462).[1] Her applications were denied initially and on reconsideration, and thereafter she requested a hearing before administrative law judge ("ALJ") Alan E. Michel. A hearing was held on March 16, 2009, and on April 14, 2009, the ALJ issued his decision finding Plaintiff "not disabled" as defined under the Act at any time through the date of his decision (tr. 10–16). The Appeals Council subsequently denied Plaintiff's request for review, and Plaintiff appealed to this court for further review.

On July 17, 2012, this court reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded the case based on the ALJ's apparent but unconfirmed reliance on the medical-vocational guidelines, or "the grids," to determine that Plaintiff could perform at least sedentary work. As the undersigned wrote in that case:

> Here, the ALJ did not state he was applying the grids or indicate which
> rule or rules within the grids he relied upon in finding Plaintiff "not

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on March 27, 2015 (ECF Nos. 12, 13). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 3:14cv657/EMT

disabled." Thus, in order to uphold the Commissioner's final decision, this court would first have to "presume" that the ALJ applied the grids in this case, as the Commissioner urges. The court would then have to presume that the ALJ applied the correct rule or rules within the grids. And finally, the court would have to presume that application of the correct rule or rules indeed compels a finding that Plaintiff is not disabled. This court cannot rely on such presumptions to affirm the decision of the ALJ.

Maynor v. Astrue, Case No. 3:11cv00109/WS/EMT, Report and Recommendation, ECF No. 19 at 7. The court further found that Plaintiff's assertions of severe pain, as a non-exertional impairment, may in fact have precluded the ALJ from sole reliance on the grids to make his determination, thus requiring the testimony of a vocational expert.

On remand, the ALJ held a second hearing on July 26, 2013, and on September 26, 2013, issued a decision again finding Plaintiff "not disabled" at any time through the date of his decision (tr. 462–72). The Appeals Council then denied Plaintiff's request for review; thus, the decision of the ALJ again stands as the final decision of the Commissioner, and is again subject to review on appeal in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

Page 4 of 18

## II.   FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 462–72):

(1)   Plaintiff meets the insured status requirements of the Act through March 31, 2012[2];

(2)   Plaintiff has not engaged in substantial gainful activity since October 1, 2005, the alleged onset date;

(3)   Plaintiff has the following severe impairments: "degenerative disc disease, osteoarthritis, left ankle; hypertension";

(4)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5)   After careful consideration of the entire record, the ALJ finds that Plaintiff has the residual functional capacity to perform the full range of sedentary, unskilled work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a);

(6)   Plaintiff is unable to perform any past relevant work;

(7)   Plaintiff was born on September 18, 1968 and was 37 years old, which is defined as a "younger individual, age 18–44," on the alleged disability onset date. Plaintiff subsequently changed age category to a "younger individual, age 45–49";

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is October 1, 2005 (date of alleged onset), through March 31, 2012 (date last insured). The time frame relevant to her claim for SSI is October 26, 2006 (the date she applied for SSI), through September 26, 2013 (the date the ALJ issued his decision). *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

Case No.: 3:14cv657/EMT

(8)   Plaintiff has a 6th grade ("marginal") education and is able to communicate in English;

(9)   Transferability of jobs skills is not an issue because Plaintiff's past relevant work is unskilled;

(10)   Considering Plaintiff's age, education, work experience, and the limitations contained in Exhibits 6F (Tr. 330–35) and 11F (tr. 355–60), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;

(11)   Plaintiff has not been under a disability, as defined in the Act, from October 1, 2005, through the date of the decision.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied,

the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity ("RFC") and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   ISSUE PRESENTED

In this appeal, Plaintiff does not pose a specific challenge to the ALJ's findings of fact concerning her physical or psychological conditions.[4] Rather, Plaintiff contends that the ALJ erred by eliciting a medical opinion from the vocational expert ("VE") while receiving her testimony, in essence asking the VE to testify as a medical expert, which she was not. Plaintiff also contends—albeit not in a separate claim—that the ALJ erred by posing an incomplete hypothetical question to the VE that did not include all of Plaintiff's impairments. The Commissioner responds that the ALJ relied upon Section 204.00 of the Medical-Vocational Guidelines ("the grids") as a framework for finding that Plaintiff was able to perform the full range of sedentary work, thus nullifying the need for VE testimony in the first place.

---

[4] In her memorandum, Plaintiff's citations to the record are confined to the ALJ's opinion and to the testimony elicited from the VE at the hearing. Because of the lack of citation to Plaintiff's medical records, and given the nature of the parties' arguments, this Order will not set out a comprehensive review of the medical evidence but will refer to the medical record only as necessary to its decision.

Once it is shown that the claimant can no longer perform her past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). One way for the Commissioner to carry this burden is through an application of the grids. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

> The grids are a series of matrices which correlate a set of variables—the claimant's [RFC] (i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience [including whether the previous work was skilled or unskilled]. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

Gibson v. Heckler, 762 F.2d 1516, 1520 (11th Cir. 1985).

"Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements)." Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983)). Reliance on the grids is not appropriate if the ALJ determines that 1) the claimant is unable to perform the full range of work at the prescribed RFC exertional level or 2) the claimant's non-exertional limitations prevent a wide range of work at that level. Phillips v. Barnhart, 357 F.3d 1232, 1243 (11th Cir. 2004). Accordingly:

> If nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform. *See* Wolfe v. Chater, 86 F.3d 1072, 1077–78 (11th Cir. 1996). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089, 120 S. Ct. 1723, 146 L. Ed. 2d 644 (2000).

Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

Plaintiff's argument centers upon the fact that the ALJ, in posing a hypothetical question to the VE, asked her to consider the medical information contained in exhibits 6F and 11F (Tr. 330–35 and 355–60, respectively). Both of these exhibits consist of medical reports from Richard W. Lucey, M.D., upon which the ALJ placed "great weight," and whose findings—the ALJ determined—were "consistent with the full range of sedentary work" (Tr. 469–70). In providing her testimony, the VE noted that neither report contained any "specific physical capacity" evaluations but that there were "some indications in there of difficulty with walking on toes because of ankle pain and that type of thing" (Tr. 492). Based on this information, the VE concluded that Plaintiff would not be able to return to her prior work as a fast-food worker, which she rated at the unskilled, light exertional level, but she then recited three

separate jobs that Plaintiff would be able to perform at the unskilled, sedentary level (Tr. 491–93).

While the ALJ did state that Plaintiff had the RFC to perform the full range of work at the sedentary level, he did not merely reference the grids. The ALJ provided:

> The claimant does have the [RFC] to perform the full range of sedentary work, and a finding of "not disabled" is directed by Medical-Vocational Rule 201.24. However, the undersigned has also considered if the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]; taking into consideration the embellished findings contained in Dr. Lucey's consultative reports (Exhibits 6F, 11F). The vocational expert testified that given all of these factors, the individual, although not able to perform her prior work, nonetheless, would be able to perform the requirements of representative occupations such as an envelope addresser (DOT 209.587-010) unskilled, sedentary work, with 101,000 jobs available in the national economy, and 5,000 jobs available in the State of Florida; paramutual [sic] ticket checker (DOT 219.587-010) unskilled, sedentary work, with 1,700,000 jobs available in the national economy and 106,000 jobs available in the State of Florida; and final assembler (DOT 713.687-018) unskilled, sedentary, with 230,000 jobs available in the national economy and 5,000 jobs available in the State of Florida.

Tr. 471.

Then, in finding the Plaintiff not disabled, the ALJ provided the following summation:

>Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

Tr. 471.

Contrary to the Commissioner's position, the court does not agree that the ALJ relied solely on the grids in rendering his decision. Rather, the ALJ indicated that he used the grids as a "framework" to guide his decision, but he also relied upon the opinion of the VE in drawing his conclusions. Guiding this analysis was the ALJ's recognition that there were "limitations' on Plaintiff's behalf that might impede Plaintiff's functional abilities, and the ALJ's conclusions were at least partly derived from the VE's testimony.[5]

Thus, the premise underpinning the Commissioner's argument, that the ALJ's decision relied solely on the grids, is unavailing. Consequently, the Commissioner's argument that the VE's testimony is essentially nullified or mooted by the ALJ's reliance on the grids is without foundation.

---

[5] While it bears noting that the ALJ did not classify Plaintiff's ankle problem as an exertional or non-exertional impairment, the distinction is ultimately of little significance because whether it is viewed as a non-exertional impairment that limits her from performing a wide range of sedentary work or as an exertional limitation on the otherwise full range of sedentary work Plaintiff could perform, reliance on the grids was foreclosed. See Francis v. Heckler, 749 F.2d 1562, 1567 (11th Cir. 1985).

The next step is to consider Plaintiff's argument that the ALJ's solicitation and use of the VE's testimony was flawed.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).  The ALJ must comprehensively describe the plaintiff's limitations in the hypothetical; however, he is not required to include limitations found not credible or not supported by the evidence.  Crawford v. Comm'r of Social Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996); McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987).  Thus, the ALJ must either clearly find that a particular limitation, to the extent it is credible, has no substantive effect on the claimant's ability to work, or he must include it in his hypothetical to the VE.  Neefe v. Commissioner of Social Sec., 531 F. App'x 1006, 1007 (11th Cir. 2013) (citing  Winschel, 631 F.3d at 1181).

On review of the record in this case, it is difficult to precisely define the contours of the ALJ's hypothetical questioning.  The relevant questioning of Leslie A. Gillespie, the VE, is as follows:

> Q [ALJ]:  Very well. Then Ms. Gillespie, I'd like for you please to consider for us the following hypothetical female person. This hypothetical female person is presently 44 years old, having been born

September the 18th, 1968.  She has a sixth grade education.  She can read and write.  She has prior work as a fast-food worker.  Can you tell us please whether or not that prior work was skilled, semiskilled or unskilled and whether or not it was done at the sedentary, light, medium, heavy or very heavy level of exertion?

A [VE]:  Yes, sir. It's unskilled work and it's performed at the light exertional level.

Q:  Bear with me just one minute please, folks.  I'd like for you please to consider for us the same hypothetical person with the same chronological, educational and vocational profiles that I posited to you thus far.  I'd like to embellish those facts with the facts found in Exhibits 6F and 11F.  Have you had a chance to look at those documents prior to this moment?

A:  Yes, sir.

Q:  Do you need time on or off the record to read the documents?

A:  I just need time to open them once again, if you'll give me just a second.

Q:  Absolutely.

A:  Yes, sir, I'm ready.

Q:  Considering the entire hypothetical now meaning the chronological, educational and vocational profiles of this particular hypothetical person, coupled now with the information set forth in Exhibits 6F and 11F, let me ask you, do you have an opinion as to whether or not this person can do her prior work?

A:  Your Honor, neither one of the forms gives a specific physical capacity form that has been marked.  There are some indications in there of difficulty with walking on toes because of ankle pain and that type of thing.  Based on the information in it, it would appear that she would

have difficulty standing for an entire shift in a fast-food position. She would be required to do that and based on the information contained in that, it would be my opinion that she would not be able to consistently perform that work as a fast-food worker.

Q: Again, taking the hypothetical as I've posited it to thus far, do you have an opinion as to whether or not this person can do other work?

A: Yes, sir.

Q: And what is that opinion?

A: Your Honor, based again on that information that's available, it would be my opinion that there would be other work available that the individual would be capable of performing.

Q: And do you have examples of that kind of work please?

A: Yes, sir. One example is an envelope addresser. The DOT code is 209.587-010. This is unskilled, sedentary work with approximately 101,000 nationally, and 5,000 in the State of -- excuse me, the State of Florida. A second example is a parimutuel-ticket checker.

. . .

The DOT code is 219.587-010. This is unskilled, sedentary work, with approximately 1.7 million nationally and 186 -- or excuse me, 106,000 in the State of Florida. A third example is a final assembler. The DOT code is 713.687-018. This is unskilled, sedentary work with approximately 230,000 nationally, and 5,000 in the State of Florida.

(Tr. 491–93).

As Plaintiff points out, the ALJ did not include his assessment of Plaintiff's RFC in his hypothetical to the VE.[6]  The ALJ twice made reference to the

---

[6] The court notes that the ALJ represents in his opinion that he included Plaintiff's RFC in his hypothetical (Tr. 471), but as the testimony shows, this did not actually occur.

"chronological, educational and vocational profiles" of his hypothetical individual, but no mention of physical capacity. The VE was the only one to make reference to functional capacity, first doing so by stating that Plaintiff's past work as a fast food worker was at the light unskilled exertional level and testifying that the hypothetical person would not be able to perform that work, and then by identifying the type of work that the hypothetical person would be able to perform—unskilled sedentary—given the VE's interpretations of Dr. Lucey's reports. In fact, the VE specifically mentioned that Dr. Lucey's reports did not include any "specific physical capacity form" (Tr. 492).

Hence, rather than providing the VE with a comprehensive RFC, the ALJ essentially left the matter in the VE's hands, to read and extrapolate from the two medical reports that the ALJ ostensibly thought relevant to the determination of Plaintiff's RFC. Seen this way, it appears from the record that it was the VE, not the ALJ, who evaluated Plaintiff as no longer capable of performing light exertional work but presently capable of sedentary work. The responsibility for assessing a claimant's RFC rests solely with the ALJ. *See* 20 C.F.R. §§ 404.1546(c); 416.946(c).

Additionally, although the VE apparently gleaned from Dr. Lucey's reports that Plaintiff's ankle problem was her only substantial limitation, it is not at all clear that the ALJ meant to isolate the ankle problem as the only such limitation. While it may

be the case that the ALJ viewed Plaintiff's other impairments as not significant or credible enough to merit inclusion in the hypothetical question posed to the VE, it is nonetheless not expressly apparent from his decision.

V.   CONCLUSION

The court finds that the ALJ posed a hypothetical question to the VE that did not account for all of Plaintiff's limitations, and he may have impermissibly relied on the VE to determine Plaintiff's RFC.  The testimony of the VE therefore cannot constitute substantial evidence to support the ALJ's findings, and to the extent those findings were relied upon, they lead the court to conclude that the Commissioner's decision is not supported by substantial evidence.

Accordingly, this case must be remanded for further administrative proceedings in light of this opinion.  *See* Winschel, 631 F.3d at 1181 (reversal and remand indicated where ALJ's hypothetical question failed to account for all of plaintiff's impairments, such that the VE's testimony could not support the ALJ's conclusion); Keeton v. Dep't of Health & Human Serv., 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine whether proper legal analysis was conducted).

Accordingly, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED**, this case is **REMANDED** to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to close the file.

**DONE AND ORDERED** this 2nd day of March 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**